Michael T. **RINEHART** and Ronald H. Brown, Appellants,

v.

Lou V. **BREWER**, et al., Iowa State Penitentiary, Appellees.

No. 73–1623.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 17, 1974.

Decided Feb. 8, 1974.

Rehearing and Rehearing En Banc Denied March 5, 1974.

---

Mark Schantz, Iowa City, Iowa, for appellants.

Lorna Williams, Asst. Atty. Gen., Des Moines, Iowa, for appellees.

Before MEHAFFY, Chief Judge, and LAY and ROSS, Circuit Judges.

PER CURIAM.

This is a civil rights action by two state prisoners challenging the constitutionality of the hair length regulations of the Iowa State Penitentiary at Fort Madison, Iowa. The district court, in a memorandum opinion, upheld the validity of the regulations in the face of a broad range of constitutional claims. 360 F.Supp. 105 (S.D.Iowa 1973). In this appeal plaintiffs have narrowed their attack to the argument that the regulations constitute an unwarranted infringement of their right to govern their own personal appearance. For the reasons stated below we affirm the judgment of the district court.

On two prior occasions this court has summarily rejected identical challenges to similar regulations in other penal institutions. Ralls v. Wolfe, 448 F.2d 778 (8th Cir. 1971), aff'g per curiam 321 F. Supp. 867 (D.Neb.1971); Blake v. Pryse, 444 F.2d 218 (8th Cir. 1971), aff'g per curiam 315 F.Supp. 625 (D. Minn.1970). Plaintiffs argue that these cases should not be deemed controlling because they antedated our first public school hair regulation decision, Bishop v. Colaw, 450 F.2d 1069 (8th Cir. 1971). Furthermore, plaintiffs argue that the "hands off" judicial attitude to review of prison administrative decisions reflected in Ralls and Blake has since been abandoned by us. To this effect plaintiffs cite McDonnell v. Wolff, 483 F.2d 1059 (8th Cir. 1973), and Moore v. Ciccone, 459 F.2d 574 (8th Cir. 1972). We reject both of these arguments.

The constitutional considerations presented by a public school hair regulation are qualitatively different from those involved in an otherwise similar prison regulation. Even if one ignores the prison administrator's substantially greater concern over identification, security against contraband, and maintenance of peaceful relations among the institution's patrons, a warden's interest in hair length regulation is readily distinguishable from that of the public school principal. The primary function of the public school is to educate its students. Any concern over the maintenance of discipline is secondary to the purpose of education. The primary function of the prison, however, is to restore in the inmate population that minimal degree of personal discipline that is essential to a safe and orderly society. On the basis of this difference alone we feel Bishop v. Colaw is distinguishable and Ralls and Blake are controlling. As for plaintiffs' contention that we have abandoned our restrained approach to review of matters involving prison administration, we disagree. We are, of course, always sensitive to any deprivation of a prisoner's fundamental constitutional rights. Nevertheless, we also remain highly deferential to the discretion of the prison administrator where, as here, a reasonable disciplinary regulation is enforced with at least the minimal procedural fairness required by the constitution.

As plaintiffs recognize, we have already upheld a police department's hair length regulation applicable to its officers. Stradley v. Andersen, 478 F.2d 188 (8th Cir. 1973). Thus, plaintiffs would have us grant to every convicted felon in prison the unqualified freedom to cater to his own tonsorial tastes that we have denied his arresting officer and the guard responsible for his safekeeping. We cannot accept such an anomalous result.

The judgment of the district court is affirmed.

LAY, Circuit Judge (dissenting).

I respectfully dissent. Bishop v. Colaw, 450 F.2d 1069 (8th Cir. 1971), rec-

ognizes that an indwelling characteristic of an individual's personal liberty is the freedom of choice to develop one's own personality and life style, which includes the right to grow and wear one's hair in any way he or she chooses. The state has no real legitimate interest in forcing persons to conform in appearance. As with other areas of constitutional concern, in *Bishop* we determined that the state must demonstrate a compelling need before individual liberties can be restricted. The State of Iowa has shown none here. The various reasons suggested by the state are illusive when examined. The "ease of identification" argument possesses little logic if prison haircuts tend to be uniform. The "health and cleanliness" theory makes little sense if the prison is otherwise maintained in a sanitary way. The "safety and hidden contraband" justification loses substance when it is remembered that the prison authorities already conduct strip searches of the prisoner's clothing and body crevices which provide less obvious areas for concealment. The majority opinion sustains the regulation restricting prison hair styles on the necessity of requiring prison discipline. It is difficult to accept this premise. Whether one is required to have his hair conform to a certain style or not will have insignificant effect upon the already highly regimented and restricted life within the parameters of heavily guarded prison walls.

If these men, who have obviously found it difficult to live within society's mores, are ever to enjoy life within the law they must learn self control and discipline in an atmosphere where self re-spect is maintained and the human personality allowed to flourish. This cannot be achieved while the state pursues a policy which requires conformity beyond need.[1]

I would reverse.

---

1. Stradley v. Andersen, 478 F.2d 188 (8th Cir. 1973), upheld a police department regulation governing hair styles of its officers on the basis that the hierarchy of a police department determined that an officer's neat appearance was essential to maintain public respect. I fail to understand the anomaly suggested if prisoners may appear as they choose and police officers are required to do otherwise. Furthermore, since writing Stradley v. Andersen, I have had substantial doubts as to whether the need shown in *Stradley* justifies the restriction on the personal lib-erty of a police officer. On reflection there was no evidence developed in *Stradley* which demonstrated that a police officer could not carry out his duties just as efficiently with his own hair style as compared to the one insisted upon by his superiors. Cf. Miller v. Ackerman, 488 F.2d 920 (8th Cir. Dec. 19, 1973). A similar regulation of the Suffolk County, New York, police department was struck down by the Second Circuit Court of Appeals after *Stradley* was decided. Dwen v. Barry, 483 F.2d 1126 (2d Cir. 1973).