Susan **GETZ**

v.

**COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF PUBLIC WELFARE.**

C.A. No. 85–4013.

United States District Court, E.D. Pennsylvania.

Dec. 27, 1985.

Gerald Gornish, Philadelphia, Pa., for plaintiff.

Carl Vaccaro, Philadelphia, Pa., for defendant.

## MEMORANDUM OPINION AND ORDER

WEINER, District Judge.

Plaintiff, Susan Getz, brought this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* alleging that her employer, defendant Pennsylvania Department of Public Welfare ("DPW") of the Commonwealth of Pennsylvania, has discriminated against her on the basis of religion. The case was tried to the court sitting without a jury.

Plaintiff began her employment with DPW in 1977 as an income maintenance worker. On April 20, 1978, she began her current position as a caseworker with DPW's Bureau of Blindness and Visual Services. As a caseworker, plaintiff is considered a civil service employee and covered by the collective bargaining agreement between the Commonwealth and the Pennsylvania Social Services Union. Pursuant to the applicable collective bargaining agreements, the plaintiff and other employees of comparable status have been provided with the following leave with pay by the Commonwealth for the year 1985–1986: Annual leave of 15.6 days, Personal Leave of 5 days, Sick Leave of 13 days, and State Holidays of 10 days. Plaintiff is permitted to accumulate her annual leave and transfer it from year to year up to a maximum total of 45 days. Personal leave must be utilized by the plaintiff during the year in which it is earned, except that if the plaintiff is unable to take such leave for legitimate reasons, it may be carried into the first 90 days of the next year. Personal and annual leave may be anticipated and taken before it is earned.

At the trial, plaintiff testified that she had accumulated slightly over five days of annual leave during 1985. Plaintiff is a member of the branch of the Jewish religion referred to as Orthodox Judaism. Orthodox Judaism is considered a bona fide religion in the United States. As part of the religious practices of Orthodox Judaism, an adherent is not permitted to work on certain holy days, nor on Saturday, the Jewish Sabbath. These holy days and the Sabbath begin at sunset of the day preceding the holy day or Sabbath, and end at sunset of the holy day or Sabbath. As part of her adherence to Orthodox Judaism, plaintiff is required to refrain from work on 13 holy days during the year. These holy days do not occur on the same date each year, and, each year, a varying number of the days fall on Saturdays, Sundays, or other state holidays. For example, in 1985 five of plaintiff's religious holy days fell on weekends or state holidays. In 1986, seven of plaintiff's religious holy days will either fall on weekends or on state holidays. In 1987, however, one will fall on a weekend. During the entire time plaintiff has been employed by the defendant, she has been permitted to refrain from work on her religious holy days by taking leave with pay.

On February 7, 1984, plaintiff wrote a memorandum to Ted Young, a district manager of her office stating that she was required to refrain from work on 15 reli-

gious holidays [1] and requesting that she be permitted to accumulate 10 days of compensatory time by working an additional one-half hour on certain days of the week. She made this request because the DPW had recently begun to operate on flex time which means that the office is open from 8 A.M. until 5 P.M., but an employee is required to work for only seven and one-half hours during that period. The employee is also supposed to take one-half hour or one hour for lunch during a portion of the workday, which does not constitute part of the seven and one-half hours, as well as fifteen minute breaks during the morning and afternoon, which do constitute part of the seven and one-half hours. Plaintiff's normal work hours under the flex time arrangement are 8:30 A.M. to 4:30 P.M. with one-half hour for lunch. Plaintiff is normally in her office two to three days a week and in the field on the other days. Plaintiff sought permission from the Bureau to work an additional half-hour on the days she was in the office and to accumulate time at the rate of one-half hour per day as compensatory time for the religious holy days she is required to take off. Plaintiff alleges that her supervisors in the district office of the Bureau granted her request and permitted her to begin accumulating time in early 1984 to compensate for her religious holidays. The matter was referred to Raymond D. Bogardus, the director of field operations of DPW in Harrisburg, who, in a letter dated February 21, 1984, denied plaintiff's request. As a result of this denial, plaintiff was not permitted to accumulate any further time. She alleges that she was permitted to use the five hours she had accumulated as compensatory time for the next holiday that occurred. Since that time, as a result of not being able to accumulate time, plaintiff alleges she was required to use annual leave for the following holidays: In 1984, 3 days and 2½ hours for Passover, which occurred on April 17, 18, 24 and 25; 2 days for Shavuot, which occurred on June 6 and 7,

for a 1984 total of 5 days and 2½ hours. In 1985, 2 days for Passover (April 12), 1 day for Shavuot (May 27), 2 days for Rosh Hashanah (September 16, 17), 1 day for Yom Kippur (September 25) and 4 days for Sukkot, Shemini Atzeret and Simchat Torah (September 30, October 1, 7 and 8), for a total of 8 days. Plaintiff further alleges that she lost the following sums as a result of being required to use annual leave for the holidays listed: 5 days and 2½ hours times an hourly rate of $11.15 in 1984 for a total in 1984 of $446.00, and 1 day times an hourly rate of $11.48 in 1985 plus 7 days times an hourly rate of $11.85 in 1985 for a total in 1985 of $708.26. Plaintiff further alleges that as a result of her being required to use annual leave for religious holy days in 1983, she was required to take leave without pay for 14 days to attend the funeral services of her father. As a result, plaintiff claims she is entitled to the sum of $1,147.65 in 1983, computed at a rate of $10.93 per hour. The total sum claimed by plaintiff is $2,301.91 ($446 in 1984 plus $708.26 in 1985 plus $1,147.65 in 1983).

On May 11, 1984, Chief Counsel for DPW advised plaintiff's attorney that plaintiff would be permitted to utilize her annual and personal leave in order to observe her religious holidays if she submitted her requests for leave in sufficient time to allow for necessary staffing reassignments. Plaintiff's attorney was further advised that, inasmuch as plaintiff was receiving in 1984 four personal days and 15 annual days leave each year, she would have sufficient leave to assure herself of being on paid status during the days she was off from work for religious observances.

On May 14, 1984, plaintiff filed a complaint with the Pennsylvania Human Relations Commission claiming she was the victim of religious discrimination under § 5.1(b) of the Pennsylvania Human Relations Act. Pa.Stat.Ann. tit. 43 § 955.1 (Purdon 1985).[2] On January 23, 1985, the

---

1. Plaintiff has subsequently stated that the actual number of religious holidays is 13.

2. The statute provides:

Except as may be required in an emergency or where his personal presence is indispensable to the orderly transaction of public business, no

Commission notified plaintiff that it was dismissing her complaint because the facts did not establish probable cause to credit the allegations of unlawful discrimination under § 5.1(b). Finally, on April 11, 1985, the Equal Employment Opportunity Commission ("EEOC") accepted the findings of the Pennsylvania Human Relations Commission. A notice of the right to sue was received by plaintiff from the EEOC on April 15, 1985 and this complaint was filed within 90 days of receipt of the notice to sue.

Plaintiff argues that defendant, as an employer, has a duty to accommodate plaintiff's religious practices unless the employer can demonstrate that an undue hardship would result from the method of accommodation. Specifically, plaintiff claims that by having to use her personal and annual leave for her religious holidays, she has lost the privilege that other employees have of taking a vacation away from home of any reasonable duration. Plaintiff prays for an injunction enjoining defendant from continuing the practices complained of and ordering defendant to reasonably accommodate plaintiff's religious practices. Plaintiff is also seeking monetary compensation for the annual leave she was required to use for the Jewish holidays which, plaintiff alleges, totals $2,301.91. Plaintiff is also seeking costs and attorney's fees. After a careful review of all the evidence, we conclude that plaintiff has not sufficiently established a prima facie case of racial discrimination and we, therefore, find for the defendant.

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1) provides in pertinent part that it is an unlawful practice for an employer:

> ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

Under 42 U.S.C. § 2000e(j):

> ... the term "religion" includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.

To establish a prima facie case of religious discrimination under § 2000e–2(a)(1), an employee must demonstrate that: 1) he has a bona fide religious belief that conflicts with an employment requirement; 2) he informed his employer about the conflict; 3) that he was discharged or otherwise penalized for failing to comply with the conflicting employment requirement. *Turpen v. Missouri-Kansas-Texas R. Co.*, 736 F.2d 1022, 1026 (5th Cir.1984); *Brown v. General Motors Corp.*, 601 F.2d 956, 959 (8th Cir.1979); *Anderson v. General Dynamics Convair Aerospace Div.*, 589 F.2d 397, 401 (9th Cir.1978), *cert. denied*, 442 U.S. 921, 99 S.Ct. 2848, 61 L.Ed.2d 290 (1979); *Redmond v. GAF Corp.*, 574 F.2d 897, 901 (7th Cir.1978). Once a plaintiff satisfies the requirements for a prima facie case, the burden then shifts to the employer to prove that it made good faith efforts to accommodate the employee's religious beliefs and, if such efforts were unsuccessful, to demonstrate that they were unable to reasonably accommodate the beliefs "without undue hardship." *Turpen*, supra. On the record be-

---

person employed by the state or any of its political subdivisions shall be required to remain at his place of employment during any day or days or portion thereof that, as a requirement of his religion, he observes as his sabbath or other holy day, including a reasonable time prior and subsequent thereto for travel between his place of employment and his home, provided however, that any such absence from work shall, wherever practicable in the judgment of the employer, be made up by an equivalent amount of time and work at some other mutually convenient time, or shall be charged against any leave with pay ordinarily granted, other than sick leave, provided further, however that any such absence not so made up or charged, may be treated by the employer of such person as leave taken without pay.

fore us plaintiff has failed to satisfy her burden.

■ At the trial, plaintiff testified that for the entire eight years she has been employed with DPW, she has been able to observe all of her religious holidays by taking annual and personal leave with pay. Not only has plaintiff been able to observe all of her religious holidays with paid leave in the past, but, as the evidence reveals, she will be able to continue to do so in the future. In 1986, plaintiff, pursuant to the current collective bargaining agreement, will be granted a total of 20.6 days of paid annual and personal leave. In addition, plaintiff testified that she had accumulated slightly over five days of annual leave for 1985. Further, in 1986, only seven of plaintiff's 13 religious holidays will occur on workdays. Thus, in 1986, plaintiff will be able to observe, with pay, the seven religious holidays which occur on workdays and still have 18.6 days of paid leave remaining which she can utilize for any lengthy vacation away from home. Plaintiff notes that in the years 1983, 1984 and 1987, 12 of the religious holidays fell or will fall during workdays. Without even considering any annual leave that plaintiff had or will accumulate during those years, plaintiff still had 7.6 days of annual and personal leave available for a vacation in 1983 and 1984 and will have 8.6 days of annual and personal leave available for a vacation in 1987.[3] Plaintiff has not had to choose between sacrificing a portion of her salary and her religious beliefs nor has she had to choose between taking a religious holiday and being penalized by her employer for missing a workday. On the contrary, plaintiff has been able to take paid leave to observe all of her religious holidays and, under the current collective bargaining agreement, has 20.6 days of annual and personal leave with which to observe her 13 religious holidays in the future, many of which will not even occur on work-

days. Thus, DPW's policies can hardly be found to conflict with plaintiff's religious beliefs and practices. Thus, we conclude that plaintiff has not satisfied the very first requirement in the three part test for establishing a prima facie case of religious discrimination. Although not determinative of the prima facie issue, we think it is also significant in determining whether plaintiff has established a prima facie case that both the Pennsylvania Human Relations Commission and the EEOC failed to find that probable cause exists to credit plaintiff's allegations of unlawful discrimination. *Philbrook v. Ansonia Board of Education,* 757 F.2d 476, 481 (2d Cir.1985).

Plaintiff directs our attention to a Conciliation Agreement dated June 30, 1975 from the records of the Pennsylvania Human Relations Commission. Paragraph 2 of Exhibit B to the agreement permitted Tana K. Markoe, a Jewish employee with DPW, "to use accumulated compensatory, annual or personal time in whatever segments are necessary as required for the observance of her faith." Besides noting the lack of evidence that this agreement is still in effect or that Ms. Markoe is still employed with DPW, we are not persuaded by this evidence since we know absolutely nothing about the background from which the agreement originated. Specifically, there is no evidence detailing the amount of religious holidays Ms. Markoe expected to observe during a year nor is there any evidence detailing DPW's annual and personal leave policy at that time. In any event, on the facts before us, we have concluded that there is no conflict between DPW's employment requirements and plaintiff's religious practices.

The rest of plaintiff's arguments define an employer's obligation to accommodate the employee's religious beliefs. However, all these arguments apply only *after* plaintiff has in fact established a prima facie

---

**3.** The 1983, 1984 calculations were arrived at by totaling plaintiff's annual leave (15.6 days) and personal leave (4 days) and subtracting from that sum the number of plaintiff's religious holidays that fell on workdays (12). The 1987 calculation was done the same way except that under the collective bargaining agreement which applies in 1987, plaintiff will be entitled to 5 days of personal leave plus the 15.6 days of annual leave.

case of religious discrimination, and the employer would then have the burden to show either "accommodation" or "undue hardship." Since we have already concluded that plaintiff has failed to establish a prima facie case of religious discrimination, these arguments are not relevant.